**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **COMMERCE EQUITIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-cv-02607** |
| | § | |
| **AMRISC, LLC, CRC INSURANCE** | § | |
| **SERVICES, INC., and HIGHPOINT** | § | |
| **INSURANCE GROUP, LLC** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS AMRISC, LLC AND CRC INSURANCE SERVICES, INC.'S MOTION
TO DISMISS AND, IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION
AND MOTION TO STAY OR DISMISS**

**SCOTT A. SHANES**
State Bar No. 00784953
SShanes@clarkhill.com
**SARAH N. WARINER**
State Bar No. 24065078
SWariner@clarkhill.com
**JEREMY R. WALLACE**
State Bar No. 24110825
JWallace@clarkhill.com
**CLARK HILL**
2600 Dallas Parkway, Suite 600
Frisco, TX 75034
(469) 287-3900 – Telephone
(469) 287-3999 – Facsimile

**ANNA K. OLIN**
State Bar No. 24102947
AOlin@clarkhill.com
**CLARK HILL**
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 651-4300 – Telephone
(214) 651-4330 – Facsimile

**ATTORNEYS FOR DEFENDANTS
AMRISC, LLC and CRC INSURANCE
SERVICES, INC.**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

I.      SUMMARY ...........................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................2

III.    ARGUMENT AND AUTHORITIES .....................................................................5

        A.      Rule 12(b)(6) requires dismissal of all of Plaintiff's claims against
                Defendants. ................................................................................................5

                1.      Standard for dismissal under Rule 12(b)(6) and Rule 9(b). ........5

                2.      Plaintiff's claims for violations of the Texas Insurance Code,
                        fraud, and fraudulent concealment should be dismissed. ...........6

                        a.      Plaintiff's claims for violations of the Texas
                                Insurance Code, fraud, and fraudulent concealment
                                should be dismissed because Plaintiff failed to
                                satisfy the pleading standard set forth in Rule 9(b). ......6

                        b.      Plaintiff's claims for violations of the Texas
                                Insurance Code, fraud, and fraudulent concealment
                                should be dismissed for failure to state a claim. ............8

                3.      Plaintiff's civil conspiracy claim should be dismissed. ...........11

                4.      All of Plaintiff's claims against Defendants should be dismissed
                        because Plaintiff has failed to plead the existence of any
                        cognizable damages. ..................................................................12

        B.      In the alternative, Defendants move the Court to compel Plaintiff to
                arbitrate its claims against Defendants in compliance with the Arbitration
                Clause.......................................................................................................14

                1.      Nonsignatories can compel arbitration. ....................................14

                2.      Arbitration is required under the Convention. ..........................16

                3.      Arbitration is required under the Federal Arbitration Act. ........18

                4.      If the Court compels arbitration, this litigation should be stayed
                        pending completion of arbitration..............................................19

5.    If the Court compels arbitration, it may also dismiss this case..................20

IV.    CONCLUSION..............................................................................................20

CERTIFICATE OF SERVICE .........................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC,*
    580 S.W.3d 136 (Tex. 2019)..................................................................... 12

*Allied-Bruce Terminix Companies, Inc. v. Dobson,*
    513 U.S. 265 (1995)................................................................................. 19

*Arthur Andersen LLP v. Carlisle,*
    129 S.Ct. 1896 (2009).............................................................................. 14

*Beiser v. Weyler,*
    284 F.3d 665 (5th Cir. 2002) ................................................................... 19

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
    343 F.3d 719 (5th Cir.), *opinion modified on denial of reh'g,* 355 F.3d 356
    (5th Cir. 2003)..................................................................................... 5, 6

*Borsack v. Chalk & Vermilion Fine Arts, Ltd.,*
    974 F. Supp. 293 (S.D.N.Y. 1997)) ........................................................ 17

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan,*
    345 F.3d 347 (5th Cir. 2003) ................................................................... 15

*Carroll v. Leboeuf Lamb, Greene & MacRae, L.L.P.,*
    374 F.Supp.2d 375 (S.D.N.Y. 2005)....................................................... 15

*Crawford Professional Drugs, Inc. v. CVS Caremark Corp.,*
    748 F.3d 249 (5th Cir. 2014) ................................................................... 14

*EZ Pawn Corp. v. Mancias,*
    934 S.W.2d 87 (Tex. 1996)............................................................... 11, 13

*Freudensprung v. Offshore Tech. Servs. Inc.,*
    379 F.3d 327 (5th Cir. 2004) ................................................ 16, 17, 18, 19

*Grigson v. Creative Artists Agency, L.L.C.,*
    210 F.3d 524 (5th Cir. 2000) ................................................................... 15

*Guidry v. Bank of LaPlace,*
    954 F.2d 278 (5th Cir. 1992) ..................................................................... 5

*Hoffman v. Finger Lakes Instrumentation, LLC,*
    789 N.Y.S.2d 410 (N.Y. App. Div. 2010) ......................................... 15, 17

*Howard v. Burlington Ins. Co.*,
    347 S.W.3d 783 (Tex. App.—Dallas 2011, no pet.)................................................ 9, 10, 11

*In re Int'l Profit Assocs., Inc.*,
    274 S.W.3d 672 (Tex. 2009)........................................................................................ 9

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ...................................................................................... 5

*Jefferson v. Lead Indus. Assoc., Inc.*,
    106 F.3d 1245 (5th Cir. 1997) .................................................................................... 5

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)...................................................................................... 15

*Jones v. Halliburton Co.*,
    538 F.3d 228 (5th Cir. 2009) .................................................................................... 19

*Little v. KPMG LLP*,
    No. SA-07-CA-621-FB, 2008 WL 576226 (W.D. Tex. Jan. 22, 2008)..................... 12, 13

*Mainali Corp. v. Covington Specialty Ins. Co.*,
    No. 3:15-cv-1087-D, 2015 WL 5098047 (N.D. Tex. Aug. 31, 2015) ............................ 8

*Manion v. Security Nat'l Ins. Co.*,
    No. 13-01-248-CV, 2002 WL 34230861 (Tex. App.—Corpus Christi Aug.
    15, 2002, no pet.) (same); ......................................................................................... 9, 10

*McDonnel Group, L.L.C. v. Great Lakes Ins. SE, UK Branch*,
    923 F.3d 427 (5th Cir. 2019) .................................................................................... 18

*Moore v. Whitney-Vaky Ins. Agency*,
    966 S.W.2d 690 (Tex. App.—San Antonio 1998, no pet.)............................................ 9

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983)...................................................................................................... 17

*Omni USA, Inc. v. Parker-Hannifin Corp.*,
    798 F. Supp. 2d 831 n.16-17 (S.D. Tex. 2011)............................................................ 9

*Partain v. Mid-Continent Specialty Ins. Servs., Inc.*,
    838 F. Supp. 2d 547 (S.D. Tex. 2012) ...................................................................... 6, 11

*Patel v. Pac. Life Ins. Co.*,
    No. 3:08-CV-249-B, 2011 WL 817478 (N.D. Tex. Mar. 8, 2011)................................. 8

*Plascencia v. State Farm Lloyds*,
    No. 4:14-cv-524-A, 2014 WL 11474841 (N.D. Tex. Sept. 25, 2014)............................ 8

*Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*,
    CV 18-6182, 2018 WL 4042874 (E.D. La. Aug. 24, 2018) ...................................... 16, 18

*Psara Energy, Ltd. v. Space Shipping, Ltd.*,
    No. 1:18-CV-00178-MAC, 2018 WL 6929342 (E.D. Tex. 2018) ............................ 16, 17

*Rainey v. Citigroup, Inc.*,
    779 Fed. Appx. 258 (5th Cir. 2019).................................................................................... 20

*Randle v. Metropolitan Transit Authority of Harris Cty.*,
    Case No. H-18-1770, 2018 WL 4701567 (S.D. Tex. 2018) ....................................... 15, 16

*Reardon v. LightPath Techs., Inc.*,
    183 S.W.3d 429 (Tex. App.—Houston [14th Dist.] 2005, no pet)................................... 12

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 n.15 (1974).................................................................................................. 16

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
    607 F.3d 1029 (5th Cir. 2010) ....................................................................................... 6, 7

*Smallwood v. Ill. Cent. R.R. Co.*,
    385 F.3d 568 (5th Cir. 2004) (en banc) ............................................................................. 8

*Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration
    International, Inc.*,
    198 F.3d 88 (2d Cir. 1999)................................................................................... 16, 17, 18

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984).............................................................................................................. 18

*Sw. Battery Corp. v. Owen*,
    115 S.W.2d 1097 (Tex. 1938)........................................................................................... 13

*Turner v. AmericanHomeKey Inc.*,
    2011 WL 3606688 (N.D. Tex. Aug. 16, 2011)................................................................... 6

*U.S. ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ............................................................................................. 6

*Vertex Servs., LLC v. Oceanwide Houston, Inc.*,
    583 S.W.3d 841 (Tex. App.—Houston [1st Dist.] 2019, no pet. h.) ............................... 12

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989).......................................................................................................... 18

*Wash. Mut. Fin. Grp., LLC v. Bailey*,
    364 F.3d 260 (5th Cir. 2004) ........................................................................................... 14

## **STATUTES**

9 U.S.C. § 2 ..................................................................................................................... 18

9 U.S.C. § 201 ................................................................................................................. 16

9 U.S.C. § 202 ................................................................................................................. 16

9 U.S.C. § 3 ..................................................................................................................... 20

Tex. Ins. Code § 541.061(2) ........................................................................................... 10

## **RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 5, 13

Fed. R. Civ. P. 9(b) .......................................................................................................... 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **COMMERCE EQUITIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-cv-02607** |
| | § | |
| **AMRISC, LLC, CRC INSURANCE** | § | |
| **SERVICES, INC., and HIGHPOINT** | § | |
| **INSURANCE GROUP, LLC** | § | |
| | § | |
| **Defendants.** | § | |

---

**DEFENDANTS AMRISC, LLC AND CRC INSURANCE SERVICES, INC.'S MOTION
TO DISMISS AND, IN THE ALTERNATIVE, MOTION TO COMPEL ARBITRATION
AND MOTION TO STAY OR DISMISS**

Defendants AmRisc, LLC ("AmRisc") and CRC Insurance Services, Inc. ("CRC" and, together with AmRisc, "Defendants") moves, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of all the claims asserted by Plaintiff Commerce Equities, Inc. ("Plaintiff") in this action. Defendants also move, in the alternative, to compel arbitration pursuant to an arbitration clause contained in an insurance policy, without which Plaintiff's claims against Defendants could not exist.

**I.
SUMMARY**

Plaintiff purchased a commercial property insurance policy (the "Policy") that contains an explicit agreement to arbitrate all claims related to an insurance policy (the "Arbitration Clause"). Plaintiff has failed to sufficiently allege any claim against Defendants—either individually or as part of a "conspiracy"—to reasonably conclude that Plaintiff relied upon or was damaged as a result of Defendants' alleged fraudulent concealment of the Arbitration Clause. Such clause was

---

explicitly contained in the Policy, to which Plaintiff had access and of which Plaintiff was charged with knowledge. Defendants are therefore entitled to a complete dismissal of Plaintiff's claims. Alternatively, the Arbitration Clause is enforceable and relates to Plaintiff's claims against Defendants, and thus such claims should be resolved in arbitration. Plaintiff's attempts to circumvent the express language of the Policy should not be permitted.

## II.
## FACTUAL BACKGROUND

This lawsuit arises from Plaintiff's contention that AmRisc—together with CRC, Defendant Highpoint Insurance Group, LLC ("Highpoint"), and "other unknown persons or entities"—devised a "scheme" to connect Plaintiff with AmRisc's "hand-picked" insurance carriers, resulting in Plaintiff obtaining insurance coverage under the Policy, which contains a mandatory New York arbitration clause (*i.e.*, the Arbitration Clause). Pl.'s Orig. Pet., ¶¶ 8, 59.[1] Plaintiff's primary—if not only—contention is that Defendants concealed the existence of the Arbitration Clause, which has supposedly "deprived Plaintiff of substantive and procedural rights under Texas law." *Id.* ¶ 50.

In May 2017, Plaintiff sought quotations for insurance coverage for an apartment complex it owns in Houston, Texas (the "Property"). *Id.* ¶¶ 18-19. Plaintiff claims that its insurance agent, Highpoint, obtained a quotation from AmRisc (the "Quotation"), which was submitted through CRC. *Id.* ¶ 20. According to Plaintiff, the Quotation contained detailed information regarding coverage under the Policy but did not mention the existence of the Arbitration Clause. *Id.* ¶ 21. After reviewing the Quotation, Plaintiff decided to purchase the outlined coverage and submitted

---

[1] Plaintiff's Original Petition (the "Petition") was attached as Exhibit B to Defendants' Notice of Removal. *See* ECF No. 1, Ex. B.

documents that Plaintiff states were "due at binding or within 30 days."[2] *Id.* ¶ 23. Plaintiff then claims it received a "Binder Confirmation," which "confirmed the coverage requested by Plaintiff, as of May 15, 2017" but did not reference the Arbitration Clause. *Id.* ¶¶ 24-25.  Plaintiff does not allege that it never received the Policy containing the Arbitration Clause.

Plaintiff contends the Property "sustained significant damage" during Hurricane Harvey. *Id.* ¶ 28. As a result, Plaintiff filed an insurance claim for such damage through Highpoint. *Id.* ¶ 29. After the various carriers under the Policy (the "Carriers") allegedly refused to make additional payments, to which Plaintiff believes it is entitled, Plaintiff sent a demand to the Carriers under the Texas Insurance Code. *Id.* ¶ 32. In response, the Carriers sent Plaintiff an arbitration demand, pursuant to the Arbitration Clause in the Policy. *Id.* ¶ 33. The Arbitration Clause provides in pertinent part:

> **SECTION VII – CONDITIONS**
>
> \*\*\*
>
> **C. ARBITRATION CLAUSE:** All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.
>
> . . .
>
> All costs of the Arbitration shall be in the discretion of the Arbitration Tribunal who may direct to and by whom and in what manner they shall be paid. The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

---

[2] To provide clarity and consistency with the Petition, Defendants, like Plaintiff, will refer to such documents herein as the "Required Signed Items." Pet., ¶ 23.

*Id.*[3] Plaintiff asserts that it did not and could not have learned about the Arbitration Clause because there was no reference to it in the Quotation, Required Signed Documents, or the Binder Confirmation. *Id.* ¶¶ 34-35. Plaintiff is silent about its ability to review and rescind the Policy once the Policy was received. Plaintiff also contends that the Arbitration Clause is no more than a "scheme" for "unlicensed insurance companies [to] enjoy the benefits of the lucrative Texas commercial lines insurance market, all the while avoiding the protections of Texas insurance laws and the Texas courts charged with enforcing those laws." *Id.* ¶ 38.

Apparently dissatisfied with the requirement to arbitrate—and despite that Plaintiff has indeed filed an arbitration against the Carriers in New York—Plaintiff now brings suit against Defendants, claiming (1) that AmRisc violated the Texas Insurance Code and committed fraud, and (2) that Defendants conspired to commit fraud against Plaintiff by allegedly concealing the existence of the Arbitration Clause. Plaintiff also asserts that "it is currently incurring significant monetary and time costs" in connection with the New York arbitration against the Carriers and that it has supposedly been deprived of "substantive and procedural rights under Texas law." *Id.*, ¶¶ 36, 43. For the reasons discussed below, Plaintiff has failed to state any claim against Defendants upon which relief can be granted.

---

[3] A true and correct copy of the Policy was attached to Defendants' Notice of Removal as Exhibit G and is also attached to this Motion as "Exhibit A." "In ruling on a motion to dismiss, the Court may consider documents that are attached to the movant's motion if the documents were referred to or incorporated by reference in the pleading of the claim that the movant is seeking to dismiss. *See Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288* (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). While Plaintiff did not attach the Policy to the Petition, the Court may nonetheless consider it because it is both referenced in the Petition and is central to Plaintiff's claims in this lawsuit.

**III.**
**ARGUMENT AND AUTHORITIES**

For the reasons discussed below, all of Plaintiff's claims against Defendants should be dismissed for failure to state a claim. In the alternative, Defendants request that the Court compel this case to arbitration for resolution of Plaintiff's claims against Defendants.

**A.**     **Rule 12(b)(6) requires dismissal of all of Plaintiff's claims against Defendants.**

      **1.**     **Standard for dismissal under Rule 12(b)(6) and Rule 9(b).**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of an action for failure to state a claim on which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). Under the 12(b)(6) standard, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). In deciding a Rule 12(b)(6) motion, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Jefferson v. Lead Indus. Assoc., Inc.*, 106 F.3d 1245, 1250 (5th Cir. 1997).

Moreover, Rule 9(b) imposes a heightened pleading standard on all claims sounding in fraud, requiring the pleader to "state with particularity the circumstances constituting fraud or mistake." *See* FED. R. CIV. P. 9(b). The Fifth Circuit has recognized that "[w]hat constitutes 'particularity' will necessarily differ with the facts of each case." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Turner v. AmericanHomeKey Inc.*, 2011 WL

3606688, at *2 (N.D. Tex. Aug. 16, 2011) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 F. App'x 513 (5th Cir. 2013) (per curiam). "Put simply, Rule 9(b) requires who, what, when, where, and how to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010). The Fifth Circuit applies Rule 9(b) to fraud complaints "with bite and without apology." *See U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

Courts in the Fifth Circuit have held that the Rule 9(b) heightened pleading standard applies "to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 557 (S.D. Tex. 2012). "Claims alleging violations under the Texas Insurance Code that are 'substantively identical' to fraud are subject to the Rule 9(b) pleading requirements." *Id.* (noting that claims under the Texas Insurance Code are "substantively identical to fraud claims" when the plaintiff alleges that violations of the Insurance Code were committed knowingly). Here, in support of its claim for violations of the Insurance Code, Plaintiff asserts the same allegations as those associated with its fraud claim. Accordingly, Plaintiff's Insurance Code claims are "substantially identical" to its fraud claim and are therefore subject to the Rule 9(b) pleading requirements. *See* Pet. ¶ 54 (explicitly contending that AmRisc violated § 541.061 "knowingly").

2. **Plaintiff's claims for violations of the Texas Insurance Code, fraud, and fraudulent concealment should be dismissed.**

    a. <u>Plaintiff's claims for violations of the Texas Insurance Code, fraud, and fraudulent concealment should be dismissed because Plaintiff failed to satisfy the pleading standard set forth in Rule 9(b).</u>

To the extent that Plaintiff's claims under § 541.061(1) of the Insurance Code and for fraud are based on conclusory allegations that AmRisc made "an untrue statement of material fact" or

---

"material misrepresentations," such claims should be dismissed. Pet., ¶¶ 49, 57. Specifically, in support of its claim for violations of the Insurance Code, Plaintiff asserts:

> AmRisc . . . misrepresented the Policy by making an untrue statement of material fact, in violation of Texas Insurance Code Section 541.061(1).

Similarly, Plaintiff asserts the following in support of its fraud claim:

> AmRisc, by and through its agent CRC, made material misrepresentations to Plaintiff regarding the nature and extent of the insurance coverage it was procuring, on behalf of Carriers, to be provided to Plaintiff . . . AmRisc knew that the scope of the insurance coverage as represented to Plaintiff was false when it was made. It made those representations and omissions regarding coverage with the knowledge that Plaintiff would rely on them to its detriment. Plaintiff justifiably relied on those misrepresentations, and suffered (and continues to suffer) damage as a result.

Aside from the foregoing allegations, Plaintiff provides no additional information regarding AmRisc's supposed misrepresentations regarding the Policy or the coverage thereunder. At a minimum, Plaintiff was required to identify the "who, what, when, where, and how" regarding AmRisc's alleged misrepresentations. *See Shandong Yinguang Chem. Indus. Joint Stock Co.*, 607 F.3d at 1032. As such, Plaintiff has failed to adequately allege that AmRisc made a material misrepresentation that would support a claim for violation of § 541.061(1) of the Insurance Code or a fraud claim.

With respect to Plaintiff's contention that AmRisc failed to disclose or concealed the existence of the Arbitration Clause, Plaintiff's allegations are as follows:

> AmRisc . . . misrepresented the Policy by failing to state a material fact that is necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061(2). AmRisc actively, willfully, and purposely concealed any reference to the arbitration provision in the Policy . . . and purposefully structured a program that was designed to circumvent Texas statutory laws regarding governance by Texas law.

> AmRisc . . . misrepresented the terms of the Policy by making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of material fact . . . AmRisc actively, willfully, and purposely concealed any reference to the arbitration provision in the Policy . . . and purposefully structured a program that

was designed to circumvent Texas statutory laws regarding governance by Texas law.

[AmRisc] willfully and intentionally omitted any mention of the Arbitration Clause, including the Delegation Clause and New York choice of law and venue, before coverage was bound. AmRisc knew that the scope of the insurance coverage as represented to Plaintiff was false when it was made. It made those representations and omissions regarding coverage with the knowledge that Plaintiff would rely on them to its detriment. Plaintiff justifiably relied on those misrepresentations, and suffered (and continues to suffer) damage as a result.

Pet. ¶¶ 50, 52, 57. The foregoing allegations are likewise insufficient to satisfy the Rule 9(b) pleading standard and should be dismissed.[4] Specifically, they show no more than a "mere theoretical possibility of recovery" and simply recite the elements of Plaintiff's claims. *See Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc); *Mainali Corp. v. Covington Specialty Ins. Co.*, No. 3:15-cv-1087-D, 2015 WL 5098047, at *5 (N.D. Tex. Aug. 31, 2015); *Plascencia v. State Farm Lloyds*, No. 4:14-cv-524-A, 2014 WL 11474841, at *6 (N.D. Tex. Sept. 25, 2014) (finding that allegations were "couched as factual allegations" but were in fact "nothing more than mere conclusions").

Accordingly, because Plaintiff fails to satisfy the Rule 9(b) pleading standard with respect to its fraud, fraudulent concealment, and Insurance Code claims, such claims should be dismissed.

      b.    <u>Plaintiff's claims for violations of the Texas Insurance Code, fraud, and fraudulent concealment should be dismissed for failure to state a claim.</u>

Even if Plaintiff's fraud, fraudulent concealment, and Insurance Code claims were not subject to the heightened pleading standard under Rule 9(b), such claims should nonetheless be

---

[4] "A dismissal for failure to plead fraud with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim." *Patel v. Pac. Life Ins. Co.*, No. 3:08-CV-249-B, 2011 WL 817478, at *2 (N.D. Tex. Mar. 8, 2011) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

dismissed. As outlined above, the crux of this lawsuit is Plaintiff's assertion that AmRisc[5] fraudulently concealed the Arbitration Clause, which Plaintiff argues it could not have discovered until July 2019 when the Carriers demanded arbitration. *See* Pet., ¶ 55. While Plaintiff makes the conclusory allegation that it relied upon an "untrue statement of material fact," Plaintiff does not articulate any specific misrepresentation on the part of AmRisc. *See id.* ¶ 49. Even if the existence of an Arbitration Clause is considered "material," Plaintiff's mistaken belief that the Policy did not contain such a clause cannot be the basis of its claims under the Insurance Code. *See Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 798 (Tex. App.—Dallas 2011, no pet.) ("In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is generally not actionable under the . . . Insurance Code."); *Manion v. Security Nat'l Ins. Co.*, No. 13-01-248-CV, 2002 WL 34230861, at *3 (Tex. App.—Corpus Christi Aug. 15, 2002, no pet.) (same); *Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.) ("[A] claim based solely on mistaken belief would fail under the Insurance Code.").

In addition to failing to allege a specific misrepresentation by AmRisc, Plaintiff has failed to plead sufficient facts to support its fraudulent concealment claim and its claim under Section 541.061(2) of the Insurance Code. "[O]n a fraudulent nondisclosure claim, the plaintiff must show that the defendant owed a duty to speak or disclose information." *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 850-51 n.16-17 (S.D. Tex. 2011); *see also In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009) ("Failing to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and

---

[5] While Plaintiff does not specifically allege a fraud claim or a claim for violations of the Insurance Code against CRC, to the extent Plaintiff argues that its allegations also apply to CRC, CRC joins all arguments asserted by AmRisc in this Motion in support of dismissal.

the party deliberately remains silent."). Plaintiff, however, has not alleged any duty owed by AmRisc—nor is AmRisc aware of such a duty—that would require AmRisc to disclose the existence of the Arbitration Clause. Further, Section 541.061(2) of the Insurance Code, under which Plaintiff's concealment allegations are based, requires Plaintiff to show that AmRisc failed "to state a material fact necessary to make other statements not misleading, considering the circumstances under which the statements were made." *See* TEX. INS. CODE § 541.061(2). Plaintiff, however, wholly fails to identify any "other statements" made by AmRisc that were rendered "misleading" as a result of AmRisc's alleged nondisclosure of the Arbitration Clause.

Moreover, Plaintiff cannot plausibly allege that it relied upon AmRisc's supposed concealment of the Arbitration Clause when the Policy—to which Plaintiff does not contend it was denied access—contains that very clause. "Texas law is clear that the policy's language controls and the insured has a duty to read and be familiar with the terms of [its] own insurance policy." *Howard*, 347 S.W.3d at 798. The fact that Plaintiff apparently did not read the Policy prior to July 2019 is no excuse. *See id.* ("An insured is bound to the terms of the policy whether [it] reads it or not.") (citing *Manion*, 2002 WL 34230861, at *3). Further, the documents that Plaintiff claims improperly failed to disclose the Arbitration Clause—including the Quotation, the Required Signed Items, and the Binder Confirmation—do not (and cannot) control over the Policy.[6] It is without question that an insurance quotation simply "summarizes the proposed coverage and does not contain all the terms, provisions and exclusions that are set forth in the actual insurance policy." *Id.* at 789. Likewise, an insurance binder generally "provides only as much coverage as will be provided in the policy itself," but there is no indication that an insurance binder must contain *all*

---

[6] A quote is not an insurance contract; it is an offer to make a contract of insurance." *Howard*, 347 S.W.3d at 789. "An insurance binder is a contract that provides insurance coverage pending the issuance of an original insurance policy." *Id.*

the terms of the Policy to avoid misleading an insured. *See id.* Plaintiff does not point to language in the Quotation, Required Signed Items, or Binder Confirmation that suggests that the Policy would not include an arbitration or similar dispute-resolution clause. Rather, Plaintiff relies on its assumptions, failure to read the Policy, and mistaken belief—none of which can survive dismissal.

Here, Plaintiff was charged with the duty of reading and familiarizing itself with the Policy, which expressly includes the Arbitration Clause. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (holding that a party that has the opportunity to read an arbitration agreement and signs it is charged with knowing its contents). "A claim for misrepresentation cannot stand when the party asserting the claim is legally charged with knowledge of the true facts." *Howard*, 347 S.W.3d at 798. As such, Plaintiff has not—and cannot—sufficiently allege that it relied on Plaintiff's failure to disclose the existence of the Arbitration Clause or that it was harmed by such nondisclosure. *See Partain*, 838 F. Supp. 2d at 558-59 (holding that plaintiffs failed to state a misrepresentation claim because they were unable to allege reliance and causation).

Accordingly, Plaintiff has not pleaded sufficient facts in support of its fraud and Insurance Code claims, and therefore such claims should be dismissed.

**3.     Plaintiff's civil conspiracy claim should be dismissed.**

Plaintiff alleges a claim for civil conspiracy against Defendants "and other unknown persons or entities." *See* Pet., ¶ 59. While Plaintiff asserts that Defendants participated "in a civil conspiracy to commit fraud," notably, Defendant does not specifically allege a fraud claim against CRC. For that reason alone, Plaintiff's conspiracy claim against CRC should be dismissed. Plaintiff's civil conspiracy claim should further be dismissed because Plaintiff has failed to sufficiently allege the existence of fraud (*i.e.*, the alleged underlying tort).

"Civil conspiracy is not an independent tort, but a derivative tort that depends on participation in some underlying tort for which the plaintiff seeks to hold the defendant liable." *Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 857 (Tex. App.—Houston [1st Dist.] 2019, no pet. h.) (citing *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140-41 (Tex. 2019)). "Therefore, civil conspiracy 'survives or fails alongside' the underlying tort alleged." *Id.* (quoting *Agar*, 580 S.W.3d at 141). For the reasons discussed above, Plaintiff has failed to sufficiently allege a fraud claim against Defendants. As a result, Plaintiff's civil conspiracy claim "fails alongside" its fraud claim, and dismissal is warranted.

   **4.     All of Plaintiff's claims against Defendants should be dismissed because Plaintiff has failed to plead the existence of any cognizable damages.**

Plaintiff's claims against Defendants should be dismissed for the additional reason that Plaintiff fails to articulate any non-speculative damages that it has suffered or will suffer. "Texas and federal law require plaintiffs to demonstrate non-speculative damages to pursue a claim. Damages which are conjectural will not survive a motion to dismiss." *Little v. KPMG LLP*, No. SA-07-CA-621-FB, 2008 WL 576226, at *5 (W.D. Tex. Jan. 22, 2008); *see also Reardon v. LightPath Techs., Inc.*, 183 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2005, no pet).

Plaintiff has asserted the following damages that are all supposedly "due to AmRisc's scheme": (1) "consequential damages to [Plaintiff's] economic welfare from the wrongful denial and delay of benefits including loss of the property and business"; (2) "significant monetary and time costs associated with traveling to New York and hiring lawyers to prosecute the arbitration"; and (3) "consequential damages, statutory interest, exemplary damages, and attorney's fees that Plaintiff could not recover if New York law applied to damages to the Property." Pet., ¶¶ 43, 65. The foregoing damages, however, simply constitute fees and costs that Plaintiff has incurred or

may incur as a result of an arbitration that *Plaintiff* filed. Such damages do not constitute actual damages and are certainly not attributable to Defendants.[7]

Moreover, Plaintiff appears to contend that the mere existence of the Arbitration Clause will deprive it of unspecified "substantive and procedural rights under Texas law," and therefore it has been damaged as a result. However, "there is nothing *per se* unconscionable about arbitration agreements. In fact, historically, Texas law favors settling disputes in arbitration." *EZ Pawn*, 934 S.W.2d at 90. "Arbitration agreements, like the one here, offer a permissible choice to traditional litigation that does not favor either party." *Id.* As such, the fact that Plaintiff "reluctantly" filed an arbitration in New York—as required under the Policy—does not mean that (1) Plaintiff has incurred any damages, or (2) Plaintiff will recover less from the Carriers or incur more expenses than it would through litigation in Texas. Plaintiff's apparent distrust of the arbitration process (*e.g.*, "it discourages . . . the arbitration panel from conducting a physical inspection of the property"[8]) adds no clarity to Plaintiff's alleged damages.

As such, because Plaintiff's damages depend on the occurrence of various "abstract events,"[9] including Plaintiff's recovery in arbitration and a showing that such recovery is less than it would have been without the Arbitration Clause, Plaintiff has failed to state a claim for an injury upon which relief can be granted.

---

[7] Further, for decades, Texas courts have held that "uncertainty as to the fact of legal damages is fatal to recovery." *Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938). Here, it is not simply the amount of Plaintiff's damages that Defendants cannot ascertain—it is the existence of them.

[8] Pet., ¶ 16.

[9] *See Little*, 2008 WL 576226, at *5 (holding that the plaintiffs failed to state a claim for injury under Rule 12(b)(6) because their damages were "speculative and conjectural" and depended on the occurrence of various "abstract events").

**B.      In the alternative, Defendants move the Court to compel Plaintiff to arbitrate its claims against Defendants in compliance with the Arbitration Clause.**

Each of Plaintiff's claims against Defendants not only relates to the Arbitration Clause but would not have been brought without its existence. As such, Plaintiff must rely on both the existence and the terms of the Arbitration Clause in support of its claims in this lawsuit. Accordingly, for the reasons discussed below, in the event the Court does not dismiss Plaintiff's claims, Defendants request that the Court compel this case to arbitration.

**1.      Nonsignatories can compel arbitration.**

Defendants have the right to compel arbitration even though they are nonsignatories to the insurance contract at issue. The United States Supreme Court has held that traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 129 S.Ct. 1896, 1902 (2009). In concert with the Supreme Court, the Fifth Circuit later held that, when recognized by a state, equitable estoppel applies when a plaintiff's claims against a nonsignatory rely on the terms of a written agreement. *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249 (5th Cir. 2014). Therefore, courts may enforce a written arbitration clause in a dispute between a signatory and a nonsignatory if state contract law allows. *Id.*

The state law governing the arbitration agreement, and disputes thereunder, applies. *See Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004). Here, as indicated in the Policy, New York law governs the Arbitration Clause. However, courts in both New York and Texas have held that equitable estoppel allows a nonsignatory to compel a signatory to arbitrate.[10]

---

[10] Although the Policy requires the application of New York law, to alleviate any doubt, an analysis of both New York and Texas law is provided herein.

*Carroll v. Leboeuf Lamb, Greene & MacRae, L.L.P.*, 374 F.Supp.2d 375, 377 (S.D.N.Y. 2005) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004)); *see also Randle v. Metropolitan Transit Authority of Harris Cty.*, Case No. H-18-1770, 2018 WL 4701567, *7 (S.D. Tex. 2018) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003)) ("It is more feasible, and thus more reasonable, that a party who has actually agreed in writing to arbitrate claims with someone might be compelled to broaden the scope of his agreement to include others.").

The allegations in the Petition support the application of equitable estoppel. Under Texas law, "direct-benefits estoppel generally requires that a signatory arbitrate claims that derive from that party's contract containing an arbitration clause." *Randle*, 2018 WL 4701567, at *9. Likewise, in New York:

> [E]quitable estoppel applies (1) when each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate, or (2) when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Hoffman v. Finger Lakes Instrumentation, LLC*, 789 N.Y.S.2d 410, 415 (N.Y. App. Div. 2010) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)) (internal quotations marks omitted). Here, is it without question that there is an Arbitration Clause contained in the Policy, without which Plaintiff's claims against Defendants would not exist. Further, though Plaintiff has not brought claims in this lawsuit against the Carriers, Plaintiff has alleged that the Carriers were part of network of "AmRisc's hand-picked carriers," which was part of the alleged "scheme." *See* Pet., ¶¶ 9-10. By Plaintiff's own admissions, the claims against Defendants refer to, and presume the existence of, the Arbitration Agreement. As such, Plaintiff "cannot 'knowingly

exploit[] the agreement containing the arbitration clause' and avoid the arbitration clause's requirements." *See Randle*, 2018 WL 4701567, at \*9.

Therefore, Defendants ask the Court to (1) prevent Plaintiff from knowingly asserting claims that relate to the Arbitration Clause while simultaneously seeking to avoid the terms of same, and (2) compel Plaintiff to arbitrate its claims against Defendants.

## 2.    Arbitration is required under the Convention.

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") is contained in Chapter 2 of the Federal Arbitration Act. *See* 9 U.S.C. § 201, *et seq.*;[11] *see also Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999); *Psara Energy, Ltd. v. Space Shipping, Ltd.*, No. 1:18-CV-00178-MAC, 2018 WL 6929342, \*2 (E.D. Tex. 2018) (adopted on January 4, 2019 in *Psara Energy, Ltd. v. Space Shipping, Ltd.*, No. 1:18-CV-00178, 2019 WL 1915619 (E.D. Tex. 2019)). The Convention applies if an arbitration agreement arises "out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2" of the Federal Arbitration Act.  9 U.S.C. § 202.

When deciding whether to compel arbitration pursuant to the Convention, "'courts conduct only a very limited inquiry.'" *Psara*, 2018 WL 6929342, at \*2 (quoting *Freudensprung v. Offshore Tech. Servs. Inc.*, 379 F.3d 327, 339 (5th Cir. 2004)). Specifically, the court considers only four

---

[11] The Convention is an international treaty that guarantees citizens of signatory countries the right to enforce agreements to arbitrate disputes. As the Supreme Court explained, "[t]he goal of the convention, and the purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). The United States Congress enacted the Convention Action, *i.e.*, Chapter 2 of the Federal Arbitration Act ("FAA") "to establish procedures for . . . courts to implement the Convention." *Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*, CV 18-6182, 2018 WL 4042874, \*4-5 (E.D. La. Aug. 24, 2018).

elements: whether the arbitration agreement (1) is in writing, (2) provides for arbitration in a Convention country, (3) arises from a commercial relationship, and (4) involves at least one party that is not a citizen of the United States. *Smith/Enron*, 198 F.3d at 92. If these elements are met, the court has no discretion to refuse arbitration unless the arbitration agreement is held to be unenforceable in some manner. *Psara Energy*, 2018 WL 6929342 at *3 (citing *Freudensprung*, 379 F.3d at 339).[12]

Where, as here, state contract law allows a nonsignatory to compel arbitration, a writing between the signatory and nonsignatory is not required. *Psara Energy*, 2018 WL 6929342, at *3 (citing *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 299 (S.D.N.Y. 1997)). More specifically, the Convention "does not require the writing to be signed by all parties to a dispute if they are otherwise bound to it under customary principles of contract law." *Id.*; *see generally Hoffman*, 789 N.Y.S.2d at 413 (stating a statute requiring an arbitration agreement be in writing "does not include as a necessary component a signature").

All elements to compel arbitration under the Convention are satisfied here. First, there is an arbitration agreement (*i.e.*, the Arbitration Clause) in writing between Plaintiff and the Carriers. Specifically, the Arbitration Clause requires that *all* matters "in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred" to arbitration. *See* Ex. A, § VII(C). Although Defendants are not signatories to the written agreement, as outlined above, a signature is not required for the Convention to apply. *See Psara Energy*, 2018 WL 6929342 at *3 (citing *Borsack*, 974 F. Supp. at 299). Second, the Arbitration

---

[12] Further, "Section 2 [of the Arbitration Act] is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25.

Clause calls for arbitration to be held in the United States—a Convention signatory. Specifically, the Policy dictates that arbitration must be held in New York and shall be subject to New York law. *See* Ex. A, § VII(C). Third, this dispute arises out of a commercial relationship, as insurance agreements are commercial in nature. *See Port Cargo Serv.*, 2018 WL 4042874, at *4-5; *McDonnel Group, L.L.C. v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 433 (5th Cir. 2019), as revised (June 6, 2019) (an insurance contract "arises from a commercial legal relationship"). Fourth, the Arbitration Clause involves at least one party that is not a United States citizen.[13]

Accordingly, all four elements of the Court's "very limited" inquiry are met. *See Smith/Enron*, 198 F.3d at 92; *Psara*, 2018 WL 6929342 at *2 (quoting *Freudensprung*, 379 F.3d at 339). The Convention applies and the Court should, therefore, compel Plaintiff to arbitrate its claims against Defendants pursuant to the terms of the Policy.

### 3.      Arbitration is required under the Federal Arbitration Act.

The Federal Arbitration Agreement ("FAA") was enacted by Congress to ensure "that private arbitration agreements are enforced according to the terms" and, as such, the FAA preempts "state laws that require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (quoting *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984)). To achieve this end, the FAA has broad applicability to include arbitration agreements found in *any* "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has

---

[13] A review of the documents attached to the Petition, as well as the Policy, indicates that—among others— Certain Underwriters at Lloyd's London and International Insurance Company of Hannover SE are not United States Citizens. Specifically, Certain Underwriters at Lloyd's London has its principal place of business in the United Kingdom of Great Britain, and International Insurance Company of Hannover SE is headquartered in Germany. *See Port Cargo Serv.*, 2018 WL 4042874, at *6 ("Hannover and Certain Underwriters are not American citizens").

interpreted "involving" broadly, defining the FAA's use of the word to be "the functional equivalent of 'affecting.'" *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 274 (1995). Because the parties to the Policy are from different states and even different countries, the Policy at issue in this case is in concert with the Supreme Court's broad interpretation that the Policy "affects" commerce. *See id*. Thus, the FAA applies.

The remaining questions for the Court are whether the Policy contains a valid arbitration agreement and whether the Arbitration Clause encompasses Plaintiff's claims. *See Jones v. Halliburton Co.*, 538 F.3d 228, 234 (5th Cir. 2009). The Arbitration Agreement is unquestionably valid, as it is contained in the very Policy under which Plaintiff claims it is entitled to reimbursement from the Carriers. Further, under the Convention, an arbitration agreement that satisfies the four-factor test must be enforced unless the agreement is null and void—a contention that Plaintiff does not make in this lawsuit. *See Freudensprung*, 379 F.3d at 339. Moreover, the Arbitration Clause encompasses Plaintiff's claims because it applies to "all matters in difference" relating to the Policy. *See* Ex. A, § VII(C). Because Plaintiff's claims against Defendants could not conceivably exist without the Arbitration Clause, it more than "relates" to Plaintiff's claims— it is the entire basis for them. *See Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) (noting that "whenever an arbitration agreement falling under the convention could *conceivably* affect the outcome of plaintiff's case, the agreement 'relates to' the plaintiff's suit") (emphasis in original).

Therefore, the Arbitration Clause is valid and within the scope of the FAA, and the Court must compel arbitration.

### 4.    If the Court compels arbitration, this litigation should be stayed pending completion of arbitration.

Under the FAA, the Court *must* stay proceedings "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C.

§ 3. As detailed above, the Arbitration Clause is valid and is within the scope of the Convention

and the FAA. Further, the Arbitration Clause requires arbitration of "[a]ll matters in difference"

that are "in relation to this insurance, including its formation and validity, and whether arising

during or after the period of this insurance." Ex. A. Therefore, all claims made by Plaintiff are

"referable to arbitration."

> **5.      If the Court compels arbitration, it may also dismiss this case.**

While a court is mandated to stay proceedings upon its decision to compel arbitration, the

Fifth Circuit expressly authorizes the Court to dismiss the proceedings entirely:

> [D]ismissal, as opposed to a stay pending arbitration, is proper "when all of the
> issues raised in the district court must be submitted to arbitration." *Alford v. Dean
> Witter Reynolds, Inc*., 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis omitted); *see
> also joness v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 839 (5th Cir. 2018) ("Some
> circuits have held that district courts must stay a case when all claims are submitted
> to arbitration, but this circuit allows district courts to dismiss such claims
> outright.").

*Rainey v. Citigroup, Inc.*, 779 F. App'x 258, 259 (5th Cir. 2019). As explained above, "[a]ll matters

in difference" that are "in relation to this insurance" are delegated pursuant to the arbitration

agreement. *See* Ex. A, § VII(C). This Court may therefore dismiss this case in its entirety upon

compelling arbitration.

## IV.
## <u>CONCLUSION</u>

For these reasons, Defendants AmRisc, LLC and CRC Insurance Services, Inc. respectfully

request that the Court dismiss Plaintiff's claims against them under Rule 12(b)(6) of the Federal

Rules of Civil Procedure. Alternatively, pursuant to the express terms of the Policy, Plaintiff

should be compelled to arbitrate its claims against Defendants, and this case should either be stayed

or dismissed upon compelling arbitration. Defendants also request such other and further relief to

which they may be justly entitled.

Respectfully submitted,

**SCOTT A. SHANES**
State Bar No. 00784953
SShanes@clarkhill.com
**SARAH N. WARINER**
State Bar No. 24065078
SWariner@clarkhill.com
**JEREMY R. WALLACE**
State Bar No. 24110825
jwallace@clarkhill.com
**CLARK HILL**
2600 Dallas Parkway, Suite 600
Frisco, TX  75034
(469) 287-3900 – Telephone
(469) 287-3999 – Facsimile

and

**ANNA K. OLIN**
State Bar No. 24102947
aolin@clarkhill.com
**CLARK HILL**
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 651-4300 – Telephone
(214) 651-4330 – Facsimile

**ATTORNEYS FOR DEFENDANTS
AMRISC, LLC and CRC INSURANCE
SERVICES, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was duly served via CM/ECF on all counsel of record on July 30, 2020.

_____

**SCOTT A. SHANES**